UNITED STATES DISTRICT COURT
District of Minnesota
Criminal No. 13-130 (ADM/JJG)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>BUFORD BRADEN ROGERS,<br>a/k/a Bucky,<br><br>      Defendant. | GOVERNMENT'S POSITION<br>ON SENTENCING |

COMES NOW the United States of America, by and through its undersigned attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, Andrew R. Winter, Assistant United States Attorney, and Charles J. Kovats, Jr., Assistant United States Attorney, and submits the following position on sentencing.

## INTRODUCTION

On January 10, 2014, Defendant pleaded guilty to Counts 1 and 3 of the Indictment filed against him. Count 1 alleged Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) and Count 3 alleged Possession of an Unregistered Destructive Device, in violation of Title 26 U.S.C. §§ 5861(d) and 5871. A convicted felon and a member of the Black Snake Militia ("BSM"), Defendant admitted illegally possessing multiple destructive devices and an SKS rifle - all of which he stored in shed in the midst of a residential neighborhood in Montevideo, Minnesota. After careful review of the facts of this case, the advisory guidelines, the statutory maximum of 10 years, and all of the sentencing factors identified in 18 U.S.C. Section 3553(a), the government respectfully requests a sentence of 63 months.

## OFFENSE CONDUCT

The charges in the Indictment stem from an investigation of the BSM, an anti-government organization of which Defendant was a member. In May of 2013, the Federal Bureau of Investigation ("FBI") received information from a witness that Defendant was in possession of a number of destructive devices and had discussed using these devices against local targets. This witness was aware that Defendant was storing the devices, as well as a number of firearms, at his father's residence in Montevideo, Minnesota. The witness also told investigators that Defendant had cheered the then-recent Boston Marathon bombing in which three people were killed and scores were injured when improvised destructive devices detonated along the marathon route. With this information, the FBI immediately sought a search warrant for Defendant's father's residence at 1204 Benson Road - Lot 8, in Montevideo, Minnesota. On May 13, 2013, the search warrant was executed.

Agents executing the search warrant uncovered a sizeable collection of explosive devices, firearms, ammunition, military clothing, and other militia-related items. In a storage shed adjacent to Defendant's father's trailer home, officers found two fused black powder devices packed with nails[1], two "Molotov cocktail" incendiary devices, and a pipe bomb. In the trailer home, officers found a second pipe bomb in Defendant's backpack, multiple firearms (including a loaded Romarm SKS-style rifle), and a significant quantity of shotgun, rifle, and handgun ammunition. Subsequent laboratory analysis showed that at least one of the destructive devices also contained Pentaerythritol

---

[1] See Attachment A, an X-ray image of the device.

tetranitrate (PETN), a powerful high-explosive with military applications. These destructive devices are designed solely to cause injury to human beings upon detonation. Packed with nails, the effect on a human being within its blast radius could be devastating. The Molotov cocktails were filled with gasoline and tar – a mixture commonly referred to as "homemade napalm."

As agents continued their search of the trailer and outbuildings, Defendant was located and interviewed by S.A. Shane Ball of the FBI. During this interview, Defendant admitted not only that he possessed the destructive and incendiary devices, but that he had created them.[2] Defendant also admitted that in years past, he had made "thermite" (a substance that burns at a very high temperature and is commonly used as a component in incendiary weapons). Defendant also admitted firing the Romarm SKS rifle at a granite pit as part of his BSM training exercises.[3]

Beyond the inherently dangerous nature of the devices was Defendant's disregard for the safety of his neighbors in storing the devices in a residential area. Within 50 to 100 feet of Defendant's explosive devices were the homes of his neighbors, some of whom were small children. For example, Witness A.M. has resided next to the Rogers' home for several years and often entertains his four-year old grandchild. A.M. also reports that the neighboring trailer (Lot #9) housed a number of small children and is located approximately 100 feet from where Defendant stored his devices. According to

---

[2] Rogers admitted possessing but denied making the pipe bomb that was found in his backpack.

[3] Other admissions made by Defendant regarding militia activity included training for "hand-to-hand" combat, tomahawk throwing, and conducting "war games" for self-defense.

A.M., lot #29 – also approximately 100 feet from the shed – is home to children ages six to eight years old.

Not only do children live adjacent to the shed, but according to A.M., many walk or ride their bikes within feet of this storage location on a regular basis.  Further, the Montevideo Public School bus drives directly in front of the shed twice each day, and the city bus travels the road directly adjacent to the shed a daily basis.

## ARGUMENT

A.   A Sentence Of 63 Months Serves the Objectives Set Forth in 3553(a) and Represents a Just Result in this Case

In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the appropriate sentencing methodology: the district court calculates the advisory Guidelines range and, after hearing from the parties, considers the 18 U.S.C. § 3553(a) factors to determine an appropriate sentence.  552 U.S. at 49-50; United States v. Ruvalcava-Perez, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors").

Defendant is assigned a criminal history category of III and an adjusted offense level of 26. *See* PSR, paragraph 21.  After subtracting three levels for acceptance of responsibility, the PSR calculates Defendant's adjusted offense level to be 23, resulting in an advisory range of 57-71 months imprisonment.  The Government agrees with these calculations.

4

Section 3553(a) requires that the Court analyze a number of factors when determining an appropriate sentence, including, "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," and "the need to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).  When viewed in light of the underlying circumstances, an analysis of the factors set forth in 18 U.S.C. § 3553(a) reveals that a penalty within the advisory Guidelines range of 57-71 months best serves the interests of justice in this case.

1.   History and Characteristics of the Defendant

Defendant is 25 years old.  His criminal record shows that he has been arrested on multiple occasions and accrued his first felony conviction at age 22.  Despite the fact that he had been under supervision by a Lac Qui Parle County judge, Defendant managed to commit the new felonies for which he now faces judgment.  Perhaps the most troubling aspect of Defendant's record, however, is his persistent focus on the possession of illegal weapons.

Defendant had his first weapons-related offense continued for dismissal by Hennepin County District Court in 2008.  PSR, paragraph 37.  Here, Defendant was found in possession of numerous items including ammunition, a fire-starter, PVC pipe ends, pipe fasteners, joint compound, electrical tape, and a package of 1,500 BBs.  Additionally, Defendant possessed a notebook with various lists consistent with items and instructions necessary to construct explosive or incendiary devices.

Defendant's prior criminal history also includes a 2009 incident in Brooklyn Park where Defendant was found in possession of three (3) throwing daggers. When questioned, Defendant admitted that he also possessed a rifle that he believed was likely stolen, as well as two magazines of ammunition. Officers also found 159 grams of marijuana and two marijuana grinders in the apartment. PSR, paragraph 32.

In 2011, Defendant was also convicted of Third Degree Burglary in Lac Qui Parle County, Minnesota. PSR, paragraph 33. Defendant was arrested after breaking into a residential garage and a nearby vehicle and stealing two firearms, tools, and a computer. Defendant was placed on probation for this offense and was under court supervision at the time he committed the federal offenses at bar. Thus, probation assessed the additional 2 points, consistent with the guidance provided under USSG Section 4A1.1(d). Beyond the simple and rather telling fact that he chose to ignore the conditions of his state probation by committing new crimes, Defendant had also failed to attend a court-ordered cognitive skills course during his term of probation. PSR, paragraph 33. Defendant's history and characteristics demonstrate that he is a repeat offender who is unable and/or unwilling to be law-abiding.

2.   The Need for Deterrence

In Defendant's case, there is a need for both individualized and general deterrence. Individualized deterrence is that which discourages Defendant from committing such a crime again. Clearly, efforts by state court authorities to deter Defendant from further criminal conduct have had little effect. A prison sentence of 63 months is an appropriate

attempt to deter Defendant from the illegal possession of destructive devices and firearms in the future.

A significant sentence in this case is also important as a general deterrent. General deterrence is the public response necessary to deter other people from committing similar crimes. "Congress has specifically made general deterrence an appropriate consideration under 3553(a)(2)(B), [it is] one of the key purposes of sentencing." Ferguson v. United States, 623 F.3d 627, 631-32 (8th Cir. 2010). A long sentence would provide general deterrence to similarly situated persons. United States v. Foy, 617 F.3d 1029, 1037 (8th Cir. 2010); United States v. Keating, 579 F.3d 891, 893 (8th Cir. 2009). The concept of general deterrence has identifiable and practical implications in this case, where Defendant is a member of an organization, including his own father, that embraces the possession and use of weapons. A sentence of 63 months in federal prison sends an important message to others that they risk significant federal penalties if they endanger their community through the building and possession of explosive devices and through the illegal possession of firearms.

3. The Need to Protect the Public

The Court should further impose a guidelines sentence of 63 months imprisonment in this case because Defendant's conduct poses a threat to the health and safety of the community. Sixty-three months is substantial enough to protect the public safety but is not more than necessary in the circumstances of this case. The length of any prison term should have a relationship to the likelihood of Defendant committing further crime, and when considering Defendant's likelihood of recidivism, "a court may take into account

any evidence of obvious incorrigibility and conclude that leniency has not been effective." United States v. Gant, 663 F.3d 1023, 1030 (8th Cir. 2011) (quoting United States v. Walking Eagle, 553 F.3d 654, 657 (8th Cir. 2009)).  As set forth above, Defendant knowingly and illegally possessed a firearm and multiple destructive devices while under the supervision of a state court judge – and the conduct took place *after* his second weapons-related conviction in state court.  This history demonstrates that he is a recidivist who is likely to re-offend and it demonstrates the need for, and the appropriateness of, the requested term of imprisonment.

## CONCLUSION

By his offense conduct, the defendant, a convicted felon, placed the citizens of Monticello, including children, at risk of death or significant injury.  Buford Rogers took pains to construct black powder and nail devices, pipe bombs, and Molotov cocktails and then store them in a residential neighborhood while disregarding the safety of those around him.  The nature and circumstances of this offense demonstrate that a guidelines sentence of 63 months is appropriate and just as this sentence appropriately balances Defendant's criminal history, his personal characteristics, and all the factors set forth in Title 18 U.S.C. Section 3553(a).

Dated:  April 18, 2014                                                  Respectfully submitted,

ANDREW M. LUGER
United States Attorney

*s/ Andrew R. Winter*

ANDREW R. WINTER
CHARLES J. KOVATS, JR.
Assistant United States Attorneys