UNITED STATES DISTRICT COURT
District of Minnesota
Criminal No. 13-130 (ADM)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>BUFORD BRADEN ROGERS<br>a/k/a Bucky,<br><br>    Defendant. | GOVERNMENT'S REPLY MEMORANDUM TO DEFENDANT'S POSITION ON SENTENCING |

COMES NOW the United States of America, by and through its undersigned attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, Andrew R. Winter and Charles J. Kovats, Jr., Assistant United States Attorneys, and submits the following reply to Defendant's Position Regarding Sentencing Considerations.

## INTRODUCTION

On April 18, 2014, the government filed its sentencing memorandum in the case at bar ("Government's Position on Sentencing" – Docket 108).  Three days after this Court's deadline for submissions, Defendant filed his sentencing memorandum ("Position Regarding Sentencing Considerations" – Docket 109) in which he makes three essential arguments.  Defendant claims that he is entitled to a downward variance, that his 2011 conviction for Burglary in the Third Degree does not qualify as a crime of violence; and finally, that a Criminal History Category III overstates his criminal history.  The government disagrees with these claims and maintains that a mid-guidelines sentence of 63 months is fair and reasonable under all the facts and circumstances of this case.

I.      **A Downward Variance is Not Appropriate**

Defendant's argument for a downward variance based upon pretrial confinement and the circumstances surrounding his arrest should be rejected by this Court. There were no "leaks" in this case as alleged by Defendant and any restrictions during his pretrial confinement were brief and appropriate. According to the Sherburne County Jail classification Sergeant Jami Neysen, Rogers was placed in the administrative segregation unit on December 23, 2013[1], but was moved back to general population twenty-nine days later on January 21, 2014. Other than this short stay, Defendant has been housed in general population. No "uniquely punitive conditions" merit a variance from the advisory guidelines range of 57-71 months.

The Defendant makes several factual assertions that deserve further illumination. First, he asserts that after "much inaccurate initial fanfare, the reality of his offense conduct was and remains: that as a prohibited person he possessed items that, because *of their inherent danger*, are unlawful unless registered. Nothing more." [Emphasis added]. The Defendant's attempt to characterize his offenses as merely regulatory violations is misplaced. Registering the assault rifle would not have made the Defendant's possession lawful as the Defendant now seems to assert. The Defendant's possession was unlawful not because the *assault rifle* was "inherently dangerous" and unregistered. Rather, Defendant's possession of the assault rifle was unlawful because the law prohibits felons from possession firearms because *felons* are dangerous. This weapon could have been lawfully possessed by any non-prohibited person.

---

[1] The publicity triggering this short stay in the segregation unit was the result of pretrial litigation in December of 2013 and not as the result of the search warrant's execution in May of 2013.

In his papers, the Defendant boldly suggests that that FBI's "descent" upon Montevideo was somehow unjustified.  Today, separated by nearly a year from the bombings in Boston, he chooses to view these events in hindsight and wag an accusing finger at the FBI's response last May in Montevideo.  However, this is both naïve, self-serving, and dangerous.  At the time the FBI "descended" on Montevideo, the FBI had been informed that the Defendant was part of a group cheering the Boston bombing, possessed explosive devices, and planned to conduct violent acts imminently.  The FBI had also been advised that the Defendant's father had allegedly fired through his front door on a previous occasion when he believed law enforcement officials were on his doorstep.

The fact that a broader plot was not discovered is not exculpatory.  It merely evidences the absence of additional inculpatory behavior.  Further, for the Defendant now to suggest that the FBI should have disregarded both the threat information they received and their professional judgment about what "might" might be needed is to substitute the Defendant's "judgment" regarding the appropriate response for the FBI's.  It is unlikely that the Defendant has the training and experience to determine precisely how many personnel are needed to cordon off a residential neighborhood to protect the citizenry from the shrapnel-laced bombs he constructed.  The government and the public should, and will, continue to defer to the FBI's professional experience on such matters.

II.     **Defendant's Prior Third Degree Burglary Conviction Qualifies as a Crime of Violence**

Rogers was convicted of burglary under a Minnesota statute that the Eighth Circuit has repeatedly found is a generic burglary statute and, therefore, a federal crime of

violence. The Supreme Court reaffirmed in *Descamps* the practice of using the "categorical approach" to determine whether a particular crime is a "violent felony" by "compar[ing] the elements of the statute forming the basis of the Defendant's conviction with the elements of the 'generic' crime–i.e., the offense as commonly understood." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). The Supreme Court in *Descamps* also reaffirmed the practice of using a "modified categorical approach" in situations where a conviction under one part of a statute is a violent felony but a conviction under another part of the statute would not be a violent felony. Where such a statute is "divisible," the sentencing court may use a limited set of court records to determine the portion of the statute under which the Defendant was convicted and then determine whether the elements of that portion of the statute are the same as the generic, violent felony offense. *Id.* at 2281.

The modified categorical approach discussed in *Descamps* is of no import where, as in this case, the underlying state felony matches the elements of a generic burglary.[2] Rogers was convicted of third degree burglary in violation of Minnesota Statutes, Section

> 609.582, subdivision 3, which provides:
>
> Whoever ***enters a building*** without consent and with intent to commit any felony or gross misdemeanor while in the building, or ***enters a building*** without consent and steals or commits a felony or gross misdemeanor while in the building, either directly or as an accomplice, commits burglary in the third degree . . . .(emphasis added)

---

[2] The Supreme Court's decision in *Descamps* is not applicable in Rogers' case, as the holding addresses convictions under "divisible" statutes, that is, one that sets out one or more elements in the alternative, such as burglary involving entry into a building, versus an automobile. *Descamps* held that a sentencing judge may not apply the modified categorical approach and look to the underlying court record when the statute of conviction has a single, indivisible set of elements. CITE

4

Defendant notes the statute may be violated by entering a building through "artifice, trick, or misrepresentation" or by "remaining within a building without consent." Minn. Stat. § 609.581 subdiv. 4(b)-(c). Based on these two means of committing the burglary, Rogers asserts Minnesota's burglary statute is not a crime of violence.

This claim is groundless. As the Supreme Court held in 1990, the elements of generic burglary include "an unlawful or unprivileged entry into, or remaining within, a building with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 598 (1990). Entering a building by trickery or misrepresentation is an unlawful or unprivileged entry, and remaining within a building is exactly that.

Defendant also overlooks the 8th Circuit's recent opinion in *United States v. Olsson*, 542 F.3d 855 (8th Cir. 2014), wherein the court analyzed Missouri's second-degree burglary statute, post-*Descamps*. Concluding that Missouri's burglary statute constituted a generic burglary offense[3], it qualified as a "crime of violence" under the categorical approach. *Id*. On prior occasions as well, the Eighth Circuit has addressed Minnesota's burglary statute and repeatedly found that it is a generic burglary statute, and therefore constitutes a "crime of violence" for purposes of the career offender provisions. *United States v. Smith*, 645 F.3d 998, 1003 n.5 (8th Cir. 2011) (Minn. Stat. § 609.582, subdiv. 3); *United States v. Flannigan*, 367 F. App'x 732, 733 (8th Cir. 2010) (unreported) (Minn. Stat. § 609.582 subdiv. 3); *United States v. Sonczalla*, 561 F.3d 842, 846 (8th Cir. 2009) (Minn. Stat. § 609.582 subdiv. 3).

---

[3] *The Missouri statute at issue reads as follows: "[a] person commits the crime of burglary in the second degree when he knowingly enters unlawfully or knowingly remains unlawfully in a building or structure for the purpose of committing a crime therein."* Mo.Rev.Stat. Section 569.170.

### III. A Category III Criminal History Does Not Overstate Defendant's Criminal Record

Defendant has requested a downward departure from the sentencing guidelines based upon § 4A1.3 of the United States Sentencing Guidelines. The Defendant attempts to justify his assertion in two ways: because (1) "the parties, knowing the nature and scope of Mr. Rogers' prior record, felt that Criminal II was an appropriate guideline response to it" and (2) one of the previous convictions is a "petty misdemeanor." (See Defendant's Papers at 15-16). These justifications are unsupported by the record.

First, § 4A1.3 articulates the standard for granting a downward departure: [i]f reliable information indicates the Defendant's criminal history category substantially over-represents the seriousness of the Defendant's criminal history or the likelihood the Defendant will commit other crimes." U.S.S.G. § 4A1.3. The Application Notes helpfully provide an example in which a downward departure could be appropriate: "a departure may be appropriate for a Defendant with two minor misdemeanor convictions close to ten years prior to the instant offense who has no other evidence of prior criminal behavior in the intervening period." Application Note 3 to U.S.S.G. § 4A1.3.

#### A. There Was No Agreement On Criminal History Category

At the outset, the Defendant takes liberties in characterizing the government's view of his criminal history and its impact on the appropriate sentence. He writes, "*the parties, knowing the nature and scope Mr. Rogers' prior record, felt that Category II was an appropriate guidelines response to it…*" (Defendant's Papers at 15-16). As the plea agreement in this matter set forth, the criminal history category identified at that time was not a stipulation. Rather, it was the parties' best estimate given the information available

at the time of the agreement – which is, in many cases, limited.  Indeed, the information available at the time of the plea agreement in this case did <u>not</u> include the following salient details about Rogers' criminal history (a history the Defendant himself knows best):  (1) that his 2009 offense involved 3 throwing daggers and the presence of a possible stolen rifle, two magazines of ammunition, and over 150 grams of marijuana; (2) that a "theft" case from 2008 involved bomb-making materials and an instruction manual; or (3) that his juvenile record included his bringing a pellet gun and shotgun shells to school in a backpack.  These revelations in the PSR severely undercut any reasonable claim that the parties knew "the nature and scope of [the Defendant's] prior record" at the time of the plea agreement and "felt that Category II was an appropriate guidelines response to it".  The Defendant may well have known these details about his criminal past but the government did not.

Under these circumstances, it is disingenuous to argue that a non-binding prediction should provide the basis for a downward departure under § 4A1.3.  Ultimately, neither the government nor a Defendant should be hamstrung by non-binding estimates of criminal history.  Indeed, as the Defendant well knows, the plea agreement expressly states this proposition.

B. <u>The Petty Misdemeanor:  Petty in Name Only</u>

While the dangerous weapon offense was classified as a petty misdemeanor, the underlying conduct involved should give the court pause in terms of minimizing its seriousness.  As described below this 2009 weapons conviction is a telling waypoint

along the Defendant's journey from less serious weapons offenses to more serious weapons offenses.

The Defendant's first brush with the law came in 2005, when the Defendant brought a pellet gun and shotgun shells to school. In 2008, the Defendant attempted to steal .308-caliber ammunition and a fire starter. When arrested, the Defendant was found in possession of a shopping list full of items used to construct an improvised bomb, including PVC pipe, BBs, joint compound, and electrical tape. Importantly, no criminal history points were awarded for this crime. In 2009, the Defendant was found in an apartment that had recently been burglarized and he was in possession of three throwing daggers. The Defendant also admitted possession of a rifle *he believed* was stolen and two magazines of ammunition, and there was marijuana present in the apartment as well. In 2011, the Defendant committed his Third Degree Burglary offense. In that case, the Defendant and two confederates stole two firearms. The Defendant, fearing his own arrest, then fled the jurisdiction for a time. Two years later, the Defendant committed the federal offenses for which he is to be sentenced – offenses in which he not only unlawfully possessed guns *again*, but also constructed highly dangerous explosive devices packed with shrapnel.

The Defendant has worryingly and persistently "progressed" from throwing daggers to improvised explosive devices in a period of about four years. The numerous arrests and sentences imposed over the last few years have had no effect on the Defendant's fascination with illegal and destructive weapons. In the government's view, the Defendant's criminal history in no way resembles the "two minor

misdemeanors committed ten years ago" example provided in the Application Notes. Defendant has exhibited consistently dangerous criminal behavior over the course of many years. His criminal record more than justifies a Category III criminal history score.[4]

## CONCLUSION

This Court should reject Defendant's arguments for a downward variance, for a reduced base offense level, and for a downward departure under Section 4A1.3. The nature and circumstances of this offense demonstrate that a mid-guidelines sentence of 63 months is appropriate and just as this sentence appropriately balances Defendant's criminal history, his personal characteristics, and all the factors set forth in Title 18 U.S.C. Section 3553(a).

Dated:  April 24, 2014                                  Respectfully submitted,

                                                        ANDREW M. LUGER
                                                        United States Attorney

                                                        *s/ Andrew R. Winter*

                                                        ANDREW R. WINTER
                                                        CHARLES J. KOVATS, JR.
                                                        Assistant United States Attorneys

---

[4] The Defendant appears to ask the Court to ignore his 2008 theft conviction, his 2009 conviction for driving without a license, and his 2011 conviction for driving after suspension, when considering whether his criminal history score is substantially overstated.